IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02156-RM-MEH

FRISBY MILES CARTER, on behalf of himself and all others similarly situated,

      Plaintiff,

v.

AMICA MUTUAL INSURANCE COMPANY, and
DOES 1–10, inclusive,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Frisby Miles Carter, on behalf of himself and others similarly situated ("Plaintiff"), initiated this purported class action on September 7, 2017 and filed the operative Amended Complaint on December 20, 2017 alleging, *inter alia*, that Defendant Amica Mutual Insurance Company ("Amica") unlawfully failed to pay its insureds – specifically, holders of Amica automobile insurance policies – ownership tax and title and registration fees associated with a motor vehicle's total loss in the event that an automobile accident or other event results in a total loss determination by Amica for the insured's vehicle. In response, Amica filed a motion to dismiss all of the Plaintiff's claims. The Court finds that Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay "ownership taxes" in settlement for the total loss of a vehicle, but the Plaintiff plausibly pleads claims for recovery of any such "registration fees" for his first and third claims; the Plaintiff fails to plead a deceptive trade practice with particularity as required by Fed. R. Civ. P. 9(b); and Plaintiff does not properly state claims for monetary or injunctive relief on behalf of a class

under the CCPA.  Thus, the Court recommends that the Honorable Raymond P. Moore grant in part and deny in part Amica's motion.

## **BACKGROUND**

### I.    Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in the Second Amended Complaint, which are taken as true only for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Frisby Carter obtained automobile insurance from Amica, which covered the 2016 calendar year, for a personal Toyota Tacoma automobile he owned during that time period. The policy provided for coverage in the event of total loss of the motor vehicle.

In or about October 2015, Plaintiff incurred $397.18 in ownership taxes and registration and title fees related to the Toyota Tacoma.  On or about February 9, 2016, Plaintiff's Toyota Tacoma was in an accident.  Plaintiff submitted a claim to Amica based on the insurance policy he had obtained for the Toyota Tacoma.  Amica apparently determined during its investigation the Toyota Tacoma was a total loss as a result of the accident, and provided Plaintiff with a "Total Loss Summary," including an accounting of the insurance benefits it would pay him in light of the total loss.  As stated in the "Total Loss Summary," Amica did not agree to pay Plaintiff the pro-rata amount of any ownership taxes and title and registration fees associated with the total loss of the Toyota Tacoma, nor the total amount of ownership taxes and title and registration fees he incurred related to the replacement vehicle.  Instead, Amica paid Plaintiff $7.20 related to a "Title Fee" only.

Thereafter, in or about May 2016, Plaintiff incurred $144.66 in ownership taxes and

registration and title fees related to a replacement vehicle for the Toyota Tacoma. Plaintiff did not receive any credit from the Department of Motor Vehicles ("DMV") for the registration fees he incurred when registering the replacement vehicle.

To date, Amica has not paid Plaintiff, who is the policy holder, the pro-rata amount of any ownership taxes and title and registration fees he incurred for the Toyota Tacoma, nor has it paid the total amount of ownership tax and registration and title fees related to the replacement vehicle.

## II.    Procedural History

Based on these factual allegations, Plaintiff claims, on behalf of himself and others similarly situated, violations of Colo. Rev. Stat. § 6-1-105, et seq. and § 10-3-1115, et seq., and bad faith breach of insurance contract. Am. Compl., ECF No. 39.

Amica moves to dismiss these claims arguing that Plaintiff fails to allege he is entitled to any ownership taxes or fees associated with the total loss, fails to properly plead the elements of his causes of action, fails to plead fraud with specificity as required for an individual claim under the Colorado Consumer Protection Act ("CCPA"), and lacks standing to bring a claim for injunctive relief under the CCPA.

Plaintiff counters that Colorado statutory law supports his position that ownership taxes fall within the purview of Colo. Rev. Stat. § 10-4-639(1), and this section mandates the payment of such taxes and fees; he has plausibly pled the elements of all causes of action; he has properly pled fraud with specificity; and he is not aware of binding case law prohibiting class-wide injunctive relief under the CCPA.

Amica replies that Plaintiff fails to articulate facts supporting an allegation that Plaintiff incurred unpaid fees and taxes covered by the statute *and* associated with the total loss, and

"Plaintiff's alleged entitlement to specific unpaid fees and taxes under C.R.S § 10-4-639(1) is a necessary condition precedent to each claim alleged"; he fails to allege facts to support the elements of a claim that Amica unreasonably denied or delayed responding to a request for payment of a covered benefit under the insurance policy; his breach of contract claim is supported only by conclusory allegations; and his CCPA class and individual claims must be dismissed.

## LEGAL STANDARDS

The parties do not dispute that the pleading requirements of Fed. R. Civ. P. 9(b) apply to Plaintiff's CCPA claim; otherwise, the Court will apply Fed. R. Civ. P. 8 and applicable case law to analyze Amica's Rule 12(b)(6) motion.

## I. Pleading Requirements under Fed. R. Civ. P. 9(b)

Pursuant to Federal Rule of Civil Procedure 9(b), a more stringent pleading standard is mandated for certain claims, such as fraud or misrepresentation. "For any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F. Supp. 2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)). Thus, with regard to their second claim alleging a violation of the CCPA, Plaintiffs must plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006); *see also HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011) ("a plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice."). In the District of Colorado, this is required regardless of whether the alleged fraud is an active representation or

a passive omission. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

Amica seeks dismissal of all three claims for relief alleged by the Plaintiff: (1) violations of Colo. Rev. Stat. § 10-3-1115, et seq.; (2) violations of Colo. Rev. Stat. § 6-1-105, et seq.; and (3) bad faith breach of insurance contract. The Court will address Amica's requests for dismissal of each of these claims in turn.

**I.      First Claim for Relief**

For their § 10-3-1115 claim, Plaintiffs allege:

28. C.R.S. § 10-4-639(a) [sic] provides in relevant part that an insurer shall pay title fees and any other transfer or registration fees associated with the total loss of a motor vehicle.

29. C.R.S. § 10-3-1115(1)(a) provides in relevant part that a person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

30. Despite its own determination the insured vehicles of Plaintiff and the Class Members were total losses, when claims were submitted by Plaintiff and the Class

Members after a motor vehicle accident or other event resulted in damage to their property, Amica failed to pay the pro-rata amount of ownership taxes and title and registration fees related to the totaled vehicle or the total amount of ownership tax and title and registration fees related to the replacement vehicle, required by C.R.S. § 10-4-639(a) [sic], and therefore violated the express language of that statute. Plaintiff seeks these two alternative forms of relief as the statute is unclear as to which form of relief the insurer is mandated to pay under its terms, and it will be up to the trier of fact to determine the most appropriate form of relief that applies under these circumstances.

31. Additionally, Amica's failure to make such payments were a violation of C.R.S. § 10-3-1115(1)(a), as an unreasonable delay and/or denial of a claim for insurance benefits Amica owed Plaintiff and the Class Members. Amica had no reasonable basis to deny making these payments.

Am. Compl., ECF No. 39. Amica first states that the operative pleading's attachment reflects payment of taxes and fees to Plaintiff, and "Plaintiff fails to allege any facts to support the assertion that he suffered other or additional taxes or fees as a part of the total loss of his vehicle." Next, Amica contends that Plaintiff fails to explain how the ownership taxes and title and registration fees he incurred purchasing his original vehicle, prior to any loss, are fees "associated with the total loss of a motor vehicle" as required by § 10-4-639. Amica also argues that Plaintiff fails to plead facts sufficient to show that the taxes and fees paid on the replacement vehicle are statutory taxes and fees incurred in association with a total loss. Finally, Amica asserts that Plaintiff's allegations mention nothing about Plaintiff "presenting to Amica for payment or reimbursement any registration and/or title fees allegedly owed."

A.    Does § 10-4-639(1) Require an Insurer to Pay "Ownership Taxes" in Settlement for the Total Loss of a Vehicle?

In the operative pleading, Plaintiff alleges Amica "failed to pay the pro-rata amount of ownership taxes and title and registration fees related to the totaled vehicle *or* the total amount of ownership tax and title and registration fees related to the replacement vehicle." Am. Compl. ¶ 30

(emphasis added).[1]  The document attached to the pleading is a "Total Loss Summary" which reflects payment to the owner based on two options: "Amica retains salvage" or "owner retains salvage."  ECF No. 39-1.  Where Amica retains the "salvage," Amica pays the owner sales tax of $2,669.33[2] and a title fee of $7.20; notably, the line for "registration fee" is blank.  *See id.*

As relevant here, Section 10-4-639(1) of the Colorado Revised Statutes, titled "Claims Practices for Property Damage," provides that "[a]n insurer shall pay title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle."  Plaintiff contends the Total Loss Summary form demonstrates that Amica failed to pay ownership taxes and registration fees, which are "required" to be paid under the statute.  Amica counters that Plaintiff has failed to articulate how ownership taxes and registration fees are required to be paid in accordance with Section 10-4-639(1).

Statutes in Colorado related to the payment of registrations fees and ownership tax include Colo. Rev. Stat. §42-3-105, titled "Application for registration -- tax," which provides, in pertinent part: "(3) The owner of such vehicle or the owner's agent shall, upon filing the application for registration, pay such fees as are prescribed by sections 42-3-304 to 42-3-306, together with the annual specific ownership tax on the motor vehicle, trailer, semitrailer, or trailer coach for which the license is to be issued."  In turn, Colo. Rev. Stat. § 42-3-304, titled "Registration fees -- passenger and passenger-mile taxes -- clean screen fund -- definitions -- repeal," and § 42-3-306,[3] titled "Registration fees -- passenger and passenger-mile taxes -- fee schedule -- repeal," identify

---

[1]Plaintiff explains the disjunctive is necessary because "the statute is unclear as to which form of relief the insurer is mandated to pay under its terms."  Am. Compl. ¶ 30.

[2]In this case, the sales tax is 7.5% of the actual cash value of $35,591.00.  ECF No. 39-1.

[3]Colo. Rev. Stat. § 42-3-305 has been repealed.

8

several types of fees to be paid with registration or annual registration renewal of different types of motor vehicles. The only "tax" identified and required to be paid by these statutes is a "passenger-mile tax" imposed on owners of "vehicles with a seating capacity of more than fourteen and operated for the transportation of passengers [over Colorado's public highways] for compensation" and of "passenger bus[es] operating over the public highways of this state and rendering service pursuant to a temporary certificate of public convenience and necessity issued by the public utilities commission." *See* Colo. Rev. Stat. § 42-3-304(13), § 42-3-306(11).

Furthermore, Colo. Rev. Stat. § 42-3-107, titled "Taxable value of classes of property--rate of tax--when and where payable -- department duties -- apportionment of tax collections -- definitions -- rules -- repeal," defines the taxable value and rate of "annual specific ownership tax" on different classes of motor vehicles. Notably, § 42-3-106 provides that an "owner of each item of classified personal property shall pay an annual specific ownership tax unless exempted by this article. Such specific ownership tax shall be annually computed in accordance with section 42-3-107 in lieu of all annual ad valorem taxes." Colo. Rev. Stat. § 42-3-106(1). This section also defines the different classes of personal property, identifying the type of vehicle at issue here as "Class A." *Id.* § 42-3-106(2)(a).

"When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, they must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). Here, the Court finds (and the parties appear to agree) that whether ownership tax is among the fees that must be paid by an insurer for a total vehicle loss in accordance with § 10-4-639(1) is an issue of

first impression in Colorado.[4] Consequently, the Court must "interpret state laws according to state rules of statutory construction, and therefore interpret [a] statute based on its plain language." *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005).

The Colorado Court of Appeals recently summarized the state's law concerning statutory interpretation as follows:

> When interpreting a statute, a court must ascertain and give effect to the General Assembly's "purpose or intent in enacting the statute." *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001). To determine legislative intent, we first look to the language of the statute, giving words and phrases their commonly accepted and understood meanings. [*People v.*] *Garcia*, 113 P.3d [775] at 780 [(Colo. 2005)]; *Martin*, 27 P.3d at 851. If those words are clear and unambiguous, we apply the statute as written. *See Martin*, 27 P.3d at 851. We may discern the plain meaning of statutory language by referring to its common dictionary meaning. *See People v. Hunter*, 2013 CO 48, ¶ 10, 307 P.3d 1083.
>
> "The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words." *Hendricks v. People*, 10 P.3d 1231, 1238 (Colo. 2000) (quoting *City & Cty. of Denver v. Gallegos*, 916 P.2d 509, 512 (Colo. 1996)); *People v. Guenther*, 740 P.2d 971, 976 (Colo. 1987) (same). Consequently, "[w]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora*, 221 P.3d 399, 419 (Colo. 2009); *accord United States v. Pauler*, 857 F.3d 1073, 1076 (10th Cir. 2017) (Where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) )).
>
> Finally, a court must read and consider the statute as a whole, giving harmonious and sensible effect to all its parts. *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003). If the statute is unambiguous and does not conflict with other statutory provisions, the

---

[4]This Court has previously issued a Report and Recommendation, including an analysis of this issue, for a substantially similar complaint filed in *Pearson v. Geico Cas. Co.*, No. 17-cv-02116-CMA-MEH, 2018 WL 2096348 (D. Colo. May 7, 2018), *aff'd in relevant part*, (D. Colo. June 3, 2018).

court need look no further in determining its meaning. *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002). However, if the language of the statute is ambiguous, or in conflict with other provisions, the court may look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to determine its meaning. *Id.*

*Abu-Nantambu-El v. State of Colo.*, -- P.3d --, 2018 WL 1247540, at *2–*3 (Colo. App. Mar. 8, 2018). With these legal principles in mind and to the extent that Plaintiff's arguments may be construed as likening ownership taxes with registration fees, the Court finds that an "ownership tax" in Colorado is separate from and different than a "registration fee" for purposes of determining which fees must be paid by an insurer for a total vehicle loss under § 10-4-639.

First, the Court finds that a review of the subject statute itself reveals the legislature's use of the words "tax" and "fee" separately to describe the various payments an insurer must make: "[a]n insurer shall pay title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle." Colo. Rev. Stat. § 10-4-639(1). Certainly, if the legislature intended that insurers pay an "ownership tax" as well, such tax would be listed. *See Martin*, 27 P.3d at 851 (if statute's words are clear and unambiguous, courts must apply the statute as written).

In fact, the Colorado legislature has specifically identified and defined both a "registration fee" and an "ownership tax" imposed on owners of motor vehicles. First, reading the statute as a whole, Part 1 of which is titled "Registration and Taxation," Section 42-3-105 specifically requires that vehicle owners seeking to register their vehicles with the state "pay such fees as are prescribed by sections 42-3-304 to 42-3-306, *together with the annual specific ownership tax on the motor vehicle . . .* for which the license is to be issued." Colo. Rev. Stat. § 42-3-105(3) (emphasis added). This section alone demonstrates the difference between a registration fee and an ownership tax. There is nothing in sections 42-3-304 or 42-3-306 indicating or even suggesting that an "ownership

tax" is among the types of fees listed therein.

Rather, a "specific ownership tax" is identified and defined by the Colorado legislature in sections 42-3-106 and 42-3-107. Subsection 106 requires that an "owner of each item of classified personal property shall pay an annual specific ownership tax unless exempted by this article" and classifies automobiles as "Class A" personal property. Colo. Rev. Stat. § 42-3-106(1); (3). Subsection 107, in turn, defines the taxable values of the different motor vehicle classes and sets the tax rates for each year the vehicle is in service. *Id.* § 42-3-107(1); (2). While ownership taxes and registration fees are both required to be paid at the time of vehicle registration (§ 42-3-105(3)), a review of the relevant statutes demonstrates that this is the only similarity between a "registration fee" and an "ownership tax" in Colorado.

Therefore, the Court concludes that the specific language of § 10-4-639(1) reveals that the statute does not require an insurer to pay ownership taxes in settlement for the total loss of a vehicle and, thus, the Plaintiff has failed to demonstrate any entitlement to such payment from Amica. To the extent Plaintiffs' first claim for relief seeks payment of the ownership taxes paid on any totaled or replacement vehicles, the Court recommends Judge Moore grant Amica's motion to dismiss the claim.

B.    Does § 10-4-639(1) Require an Insurer to Pay "Registration Fees" in Settlement for the Total Loss of a Vehicle?

According to the plain language of the statute, the short answer is "yes," an insurer must pay a "registration fee associated with the total loss of a motor vehicle." Colo. Rev. Stat. § 10-4-639(1). Plaintiff alleges he paid hundreds of dollars "in ownership taxes and title and registration fees," but Amica paid him only $7.20 for a "title fee" and nothing for a "registration fee" for his total vehicle loss. *See* ECF No. 39-1. Amica contends that "Plaintiff fails to allege any facts to support the

12

assertion that he suffered other or additional taxes or fees as a part of the total loss of his vehicle." The Court is not convinced; although the Plaintiff does not articulate "how much he paid for which fee and/or tax," the Court recommends Judge Moore find at this early stage of the litigation that Plaintiff's allegations plausibly state he has been damaged by Amica's failure to pay the fees required by § 10-4-639(1) in full; whether $7.20 for the vehicle loss covers all fees owed pursuant to statute (i.e., fees "associated with the total loss" of the Tacoma) is a question for the fact finder.

In addition, the Court is not persuaded that Plaintiff failed to allege he "present[ed] to Amica for payment or reimbursement any registration and/or title fees allegedly owed." Section 10–3–1115 of the Colorado Revised Statutes provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10–3–1115(1)(a). A "[p]laintiff must therefore show that: (1) benefits were owed under the policy; and (2) defendant unreasonably delayed or denied payment of plaintiff's claim." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (citing Colo. Rev. Stat. § 10–3–1115). Here, Plaintiff alleges that he "incurred $397.18 in ownership taxes and registration and title fees related to the Toyota Tacoma" and "incurred $144.66 in ownership taxes and registration and title fees related to a replacement vehicle" following an accident involving the Tacoma. Am. Compl. ¶¶ 10, 11. Plaintiff also states he "submitted a claim to Amica based on the insurance policy he had obtained from Amica for the Toyota Tacoma" and "[t]o date, Amica has not paid the policy holder, Mr. Carter, the pro-rata amount of any ownership taxes and title and registration fees he incurred for the Toyota Tacoma, nor has it agreed to pay the total amount of ownership tax, and registration and title fees related to the replacement vehicle." *Id.* ¶¶ 11, 13. The Court finds these allegations sufficient to plausibly

state a claim for violation of Colo. Rev. Stat. § 10-3-1115, et seq.

Therefore, this Court respectfully recommends that Judge Moore deny the motion to dismiss Plaintiff's first claim for relief to the extent it seeks recovery of "registration fees" owed pursuant to § 10-3-1115.

## II.    Second Claim for Relief

For his CCPA claim,[5] the Plaintiff alleges:

35. Colorado's Deceptive Trade Practices Act, C.R.S. § 6-1-105, et seq. ("DTPA"), provides an individual may maintain a private civil action against a company engaged in the sale of services for violations of the DTPA's provisions.

36. Plaintiff alleges Amica violated the DTPA by, inter alia, failing to disclose material information about the automobile insurance policies it provided to Plaintiff and the Class Members under C.R.S. § 6-1-105(1)(u), i.e. by failing to disclose Amica did not, as a uniform business practice, pay the pro-rata amount of ownership tax and title and registration fees related to the totaled vehicle or the total amount of ownership tax and title and registration fees related to the replacement vehicle, minus a credit from the DMV, if any.

37. As a result of Amica's deceptive business practices, Plaintiff and the Class Members have suffered damage and lost money in that they paid for insurance services they otherwise would not have had the truth been disclosed, in an amount to be proven at trial. Plaintiff seeks an order enjoining Amica from continuing to engage in the deceptive practices alleged herein.

Am. Compl., ECF No. 39. Amica contends that Plaintiff's individual claim for damages under the CCPA fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6) and is not plead with sufficient particularity under Fed. R. Civ. P. 9(b); the CCPA expressly bars a private class action claim for

---

[5]In his pleading, Plaintiff refers to the statute as the "Deceptive Trade Practices Act." However, in 1969, Colorado's General Assembly adopted the CCPA which was based, in large part, on the Uniform Deceptive Trade Practices Act (UDTPA). *See May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973 n.9 (Colo. 1993). While the subsection to which Plaintiff refers is titled "Deceptive trade practices," the proper title of the statute is "Colorado Consumer Protection Act." Colo. Rev. Stat. § 6-1-101.

damages; and Plaintiff does not have standing, individually or on behalf of a class of individuals, to bring a claim for injunctive relief under the CCPA.

A.   Are the Plaintiff's Allegations Pled with Particularity?

To demonstrate a plausible claim under the CCPA, a plaintiff must allege (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *See Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146–147 (Colo. 2003); *see also Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011).

Pursuant to Fed. R. Civ. P. 9(b), "the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Tech. Corp. Secs. Litig.*, 147 F. Supp. 2d at 1054. Thus, as applied to a claim under the CCPA, the first element—that a defendant engaged in an unfair or deceptive trade practice—must be particularly pled. According to the Tenth Circuit, a plaintiff must plead "the who, what, when, where, and how of the alleged fraud" or, in other words, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Sikkenga*, 472 F.3d at 726–27. These requirements apply regardless of whether the alleged fraud is an active representation or a passive omission. *See Tara Woods Ltd. P'ship*, 731 F. Supp. 2d at 1114.

Here, the Plaintiff alleges Amica omitted (or concealed) its practice of failing to pay the fees required by Colo. Rev. Stat. § 10-4-639(1) for a total motor vehicle loss when selling its insurance

policies to consumers. Am. Compl. ¶ 36. "A material omission is a deceptive trade practice if the defendant failed to 'disclose material information ... which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.'" *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1121 (10th Cir. 2008) (quoting Colo. Rev. Stat. § 6–1–105(1)(u)).

First, the Court rejects Amica's argument that Plaintiff fails to plead any "sales transaction"; Plaintiff alleges that he "obtained" or purchased an insurance policy for the 2016 calendar year from Amica for the subject vehicle and it was at that time Amica allegedly concealed its "practice" of failing to pay the required fees upon a total vehicle loss. *See* Am. Compl. ¶¶ 9, 36. The Court finds these allegations sufficient to state the "advertisement or sale" element of a deceptive trade practice.

However, the Court agrees that Plaintiff fails to allege with particularity the circumstances constituting Amica's concealment, including the identity of the party who allegedly concealed Amica's "practice" at the time Plaintiff purchased the policy and how the party knew of Amica's practice at that time. *See* Colo. Rev. Stat. § 6-1-105(1)(u). Moreover, Plaintiff assumes a "practice" of concealing Amica's intent not to pay § 10-4-639(1) fees simply because his registration fees and taxes totaled hundreds of dollars but the "fee" actually paid by Amica totaled $7.20 for the vehicle loss. While this allegation may be sufficient to state a plausible claim for injury under Fed. R. Civ. P. 8, it does not adequately plead "the who, what, when, where, and how of the alleged fraud" sufficient to meet the requirements of Fed. R. Civ. P. 9(b) and necessary to state a deceptive trade practice under the CCPA. *See Sikkenga*, 472 F.3d at 726–27.

Therefore, the Court recommends that Judge Moore grant the motion to dismiss Plaintiff's second claim for violation of the CCPA for the Plaintiff's failure to allege with particularity that

Amica "engaged in an unfair or deceptive trade practice."

      B.      Are Plaintiff's Class Claims Permitted under the CCPA?

If Judge Moore disagrees with this Court's analysis and determines that the Plaintiff properly alleges a deceptive trade practice under the CCPA, the Court recommends that Plaintiff's class claims seeking actual and triple monetary damages and injunctive relief be dismissed. *See* Am. Compl., ECF No. 39 at 11.

Two judges in this District and two courts in the Tenth Circuit interpreting the CCPA have found that the statute expressly *excepts* the recovery of actual damages, triple damages, and attorney's fees in class actions and, thus, "creates no statutory liability for a defendant in a private class action." *See* Colo. Rev. Stat. §6-1-113(2); *see also Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218–19 (D. Colo. 2012) (Krieger, J.) (§ 6-1-113(2) "defines a defendant's liability under the CCPA in a private action. It limits such liability to specified remedies, and expressly states that such remedies are not applicable in class actions. By logical extension, the CCPA creates no statutory liability for a defendant in a private class action."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD, 2015 WL 4036319, at *2–*3 (Daniel, J.) (D. Colo. July 1, 2015)("a class action for damages under the CCPA is barred"); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1234–35 (D. Kan. 2015) ("the plain language of the present statute precludes a class action claim for actual damages"); *In re Santa Fe Natural Tobacco Co. Marketing & Sales Practices & Prods. Liability Litig.*, 288 F. Supp. 3d 1087, 1260 (D. N.M. 2017) ("The CCPA's statutory language, however, expressly prohibits class action recovery for damages.").

The Plaintiff contends that a statement made by the Colorado Court of Appeals in *Robinson v. Lynmar Racquet Club, Inc.*, 851 P.2d 274, 278 (Colo. App.1993) demonstrates that "monetary

relief under the CCPA is still available on a class-wide basis." Resp. 16–17. In *Robinson*, the court

noted, "We observe that, although the statute does not preclude class members from bringing an

action for actual damages, Robinson alleged no actual damages in her complaint . . . ." *Id.*

However, the court addressed a prior version of the statute in which actual damages were not

expressly included in the "exception" subsection of the statute. *See id.* The current version of the

statute provides:

> (2) **Except in a class action** or a case brought for a violation of section 61–709, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article shall be liable in an amount equal to the sum of:
>
>> (a) The greater of:
>>
>>> (I) The **amount of actual damages sustained**; or
>>>
>>> (II) Five hundred dollars; or
>>>
>>> (III) Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct; plus
>>
>> (b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

Colo. Rev. Stat. § 6-1-113(2) (emphasis added). As Chief Judge Krieger observed, "the question

of whether class members could recover actual damages was not a question before the [*Robinson*]

court" and, thus, Judge Krieger was "unpersuaded that *Robinson* stands for the proposition that a

class of plaintiffs can obtain an award of actual damages under § 6–1–113." *Martinez*, 886 F. Supp.

2d at 1219 & n.6.

   Plaintiff also cites an opinion from the Eastern District of Michigan for support of his

position that a class may recover economic damages under the CCPA; however, that court also cited

*Robinson* and did not acknowledge that the *Robinson* court was addressing a prior version of the statute. *See In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 873–74 (E.D. Mich. 2009). This Court respectfully finds unpersuasive *Onstar*'s analysis as applied to this case; rather, the Court is persuaded by the opinions of the majority of courts interpreting the CCPA and finding that "the CCPA creates no statutory liability for a defendant in a private class action." *See Martinez*, 886 F. Supp. 2d at 1219.

As for whether the CCPA provides injunctive relief to a class, Defendant contends that the statute's plain language limits recovery for a private individual to actual damages, treble damages, attorney's fees, and costs, and empowers only the Attorney General or the District Attorney to pursue injunctive relief as a remedy in an administrative action. Mot. 13. The Plaintiff counters that the CCPA's purpose of "reach[ing] practices of the type that affect consumers generally" supports a "logical conclusion" that the CCPA offers injunctive relief as a remedy for an individual or class member. Resp. 17. Considering the statute as a whole (*Martinez*, 70 P.3d at 477), the Court finds that while Colorado's General Assembly included injunctive relief as a remedy that may be pursued by the Attorney General or a district attorney (*see* Colo. Rev. Stat. § 6-1-110), the Assembly intentionally omitted injunctive relief as a remedy for a private cause of action under the CCPA (*see* Colo. Rev. Stat. § 6-1-113) and, thus, Plaintiff may not seek injunctive relief in this case on behalf of either himself or a class. *See Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist.*, 221 P.3d at 419 ("[w]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully.").

Therefore, the Court recommends that Judge Moore grant Amica's motion to dismiss

Plaintiff's class claim for statutory damages and injunctive relief under the CCPA.

## III. Third Claim for Relief

For his third claim for bad faith breach of insurance contract, the Plaintiff alleges:

39. Amica's failure to pay ownership tax and title and registration fees associated with a total loss to its automobile insurance customers in Colorado, as mandated by C.R.S. § 10-4-639(a) [sic], was not reasonable conduct for an established automobile insurer such as Amica.

40. As an established automobile insurer offering policies in Colorado, Amica knew of or recklessly disregarded the fact that its failure to pay the pro-rata amount of ownership tax and title and registration fees related to the total loss of an insured motor vehicle in Colorado, or the total amount of ownership tax and title and registration fees related to the replacement vehicle, minus a credit from the DMV, if any, based on C.R.S. § 10-4-639(a)'s [sic] mandate, was unreasonable.

41. As an established automobile insurer offering policies in Colorado, Amica also knew of or recklessly disregarded the fact that its delay and/or denial of payments owed to Plaintiff and Class members, in violation of C.R.S. § 10-3-1115(1)(a), was unreasonable.

Am. Compl., ECF No. 39. While Plaintiff's first and third claims both require that he demonstrate Amica's alleged conduct was "unreasonable," the tort also requires that "the insurer knew or recklessly disregarded the fact that its conduct was unreasonable." *Vaccaro*, 275 P.3d at 756.

Amica raises essentially the same arguments here as those raised in support of its request to dismiss the Plaintiff's first claim for relief: the Plaintiff's allegations are conclusory and insufficient to state a plausible claim for relief. *See* Mot. 7. Therefore, for the same reasons set forth in Section I, *supra*, the Court finds that "ownership taxes" are not included in the fees required to be paid by an insurer for a total vehicle loss. However, at this early stage of the litigation, the Plaintiff's allegations, including the blank line next to "Registration Fee" on the Total Loss Summary form attached to the Second Amended Complaint, plausibly state he has been damaged by Amica's knowing or reckless disregard of its failure to pay all fees required by § 10-4-639(1) in full. Again,

whether any registration fee was "associated with the total loss of the vehicle" is a question not appropriate for adjudication pursuant to Fed. R. Civ. P. 12(b)(6).

The Court recommends that Judge Moore grant Amica's motion to dismiss the Plaintiff's third claim to the extent it seeks recovery for paid "ownership taxes" but, otherwise, deny the motion to dismiss Plaintiff's third claim for recovery of "title fees, sales tax, and any other transfer or registration fee associated with the total loss of a motor vehicle." *See* Colo. Rev. Stat. § 10-4-639(1).

**CONCLUSION**

The Court concludes Colo. Rev. Stat. § 10-4-639(1) does not require an insurer to pay "ownership taxes" in settlement for the total loss of a vehicle, but the Plaintiff has plausibly pled his first and third claims to recover any such "registration fees"; the Plaintiff has failed to plead a deceptive trade practice with particularity as required by Fed. R. Civ. P. 9(b); and Plaintiff does not plausibly state claims for monetary and injunctive relief on behalf of a class under the CCPA.

Given these findings, the Court respectfully recommends that Judge Moore grant Amica's motion to dismiss the first and third claims to the extent they seek recovery of "ownership taxes," but otherwise deny the motion to dismiss the first and third claims; and grant the motion to dismiss Plaintiff's second claim for failure to plead a "deceptive trade practice" or, in the alternative, dismiss the claim seeking class-wide monetary damages and injunctive relief.

THEREFORE, based on the entire record and for the reasons stated above, the Court respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [filed February 6, 2018; ECF No. 43] be **granted in part and denied in part** as set forth

herein.[6]

Respectfully submitted at Denver, Colorado, this 22nd day of June, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[6]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)).